## Hamm v. Philadelphia Board of Education

*Martin A. Ostrow*, for plaintiff.
*Vincent J. Salandria*, for defendant.

FORER, *J.*, January 31, 1979—Plaintiff brings this action in equity attacking the constitutionality of section 1122 of the Pennsylvania Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1122, which permits a school board to terminate the services of a professional employe at the age of 65 or the age at which the employe becomes eligible to receive full benefits under the Federal Social Security Act.[1] Plaintiff is a 69-year-old man in good health who had been employed as a Philadelphia school teacher for more than 25 years. Plaintiff admits that he was eligible to receive full benefits at the time of this termination. Defendant stipulated that plaintiff is in every way qualified and able to teach, but contends that the act permits plaintiff's termination of employment by reason of age. See Frantz v. Baldwin-Whitehall School Dist., 460 Pa. 192, 331 A. 2d 484 (1975); Hopfer v. Oklamchak, 407 Pa. 193, 180 A. 2d 69 (1962).

Although the court held an evidentiary hearing, no evidence was presented with respect to the mental or physical requirements for teachers. Cf. Gault v. Garrison, 569 F. 2d 993 (7th Cir. 1977), and Palmer v. Ticcione, 576 F. 2d 459 (2d Cir. 1978).

---

1. 24 P.S. §11-1122 provides in pertinent part that: "[B]oards of school directors may terminate the services of any professional employe who has attained the age of sixty-two except a professional employe who is a member of the old age and survivors insurance system pursuant to the provisions of the act . . . In such case, the board may terminate the services of any such professional employe at the age of sixty-five or at the age at which the employe becomes eligible to receive full benefits under the Federal Social Security Act."

Plaintiff also contends that because he is qualified to teach "film" as well as English he has special qualifications which other teachers lack and that his retention would be appropriate under Guidelines for Recommending Retention in Service beyond Mandatory Retirement Age.[2]

This court has jurisdiction of the case. The Attorney General has been given notice of this action but has not filed a brief or participated in the trial of the case.[3] Defendant admits that plaintiff has no adequate remedy at law and that an injunction is an appropriate remedy. Defendant has moved for a compulsory nonsuit.

A statute is presumed to be constitutional: Statutory Construction Act of December 6, 1972, 1 Pa.C.S.A. §1922(3), as amended. A statute will not be declared unconstitutional unless it "clearly, palpably and plainly" violates the Constitution of either the United States or this Commonwealth: In re William L., 477 Pa. 322, 383 A. 2d 1228, 1231 (1978); Tosto v. Pa. Nursing Home Loan Agency, 460 Pa. 1, 16, 331 A. 2d 198, 205 (1975); Singer v. Sheppard, 33 Pa. Commonwealth Ct. 276, 381 A. 2d 1007, 1010 (1978); Radnor Tp. School Dist. v. Betty, 30 Pa. Commonwealth Ct. 425, 651, 373 A. 2d 1361, 1363 (1977). See also Danson v. Casey, 33 Pa. Commonwealth Ct. 614, 382 A. 2d 1238,

---

2. Defendant Ex. 1 of this court dated 5/31/78. This contention was not pressed. The court finds that there is no category of teacher course qualification for courses in film, that such courses are given rarely and sporadically and that there is no clear established "shortage area" in film teaching. Plaintiff is not, therefore, entitled to retention on this ground.

3. See opinion of this court, 5/31/78.

1245 (1978); Lawrence County v. Foht, 33 Pa. Commonwealth Ct. 379, 381 A. 2d 1348, 1351 (1978).

The party alleging constitutional infirmity has the burden of proof on this issue, and any doubts must be resolved in favor of sustaining the legislation: Triumph Hosiery Mills, Inc. v. Com., 469 Pa. 92, 364 A. 2d 919, 921, appeal dismissed 97 S. Ct. 1090 (1976); Glancey v. Casey, 447 Pa. 77, 88, 288 A. 2d 812 (1972); Com. ex rel Finken v. Roop, 234 Pa. Superior Ct. 155, 165, 339 A. 2d 764, 769 (1975), cert. denied, 424 U.S. 960 (1976).

Defendant relies on Mass. v. Murgia, 427 U.S. 307 (1976),[4] holding that it is unnecessary to apply a strict scrutiny test to age classification and that the rational basis test is applicable. In cases of alleged racial discrimination, the United States Supreme Court has applied the strict scrutiny test: McLaughlin v. Fla., 379 U.S. 184 (1964). See also Graham v. Richardson, 403 U.S. 365 (1971) (alienage), and Oyama v. Cal., 332 U.S. 633 (1948) (ancestry). In cases involving sex and illegitimacy, the court has applied a "substantial relation" to the purpose test: Trimble v. Gordon, 430 U.S. 762 (1977); Craig v. Boren, 429 U.S. 190 (1976); Mathers v. Lucas, 427 U.S. 495 (1976); Reed v. Reed, 404 U.S. 71 (1971). The United States Supreme Court's rationale for application of the strict

---

4. But see comprehensive dissenting opinion by Mr. J. Marshall and Abramson, Compulsory Retirement, the Constitution and the Murgia Case, 42 Mo. L. Rev. 25-52 (1977). See also Gunther, The Supreme Court, 1971 Term, 86, Harv. L. Rev. 1 (1972), criticizing the two-tier approach to equal protection issues.

scrutiny test is that such test is applicable only when "the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Mass. v. Murgia, supra at 312. This court agrees that government employment is not per se a fundamental right: Lindsey v. Normet, 405 U.S. 56 (1972).[5] Although the United States Supreme Court has ruled that age is not a suspect classification, states may impose a higher standard under their state constitutions and laws than is required by the United States Constitution: Com. v. Campana, 455 Pa. 622, 624, 314 A. 2d 854, cert. denied, 417 U.S. 969 (1974). article I, sec. 1, and article I, sec. 28 of the Pennsylvania Constitution provide as follows:

Article I, sec. 1:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

Article I, sec. 28:

---

5. As of 1977, approximately 15 million of the total 90 million composing the civilian work force of the United States are employed by various government agencies. Given this one in six ratio, a court cannot blithely declare that one has no constitutional right to be a policeman. See also opinion of Holmes, J., in McAuliffe v. Mayor of New Bedford, 155 Mass. 216, 220, 29 N.E. 517, 517-18 (1892). The Supreme Court in Chalk Appeal, 441 Pa. 376, 272 A. 2d 457 (1971), held that public employes are protected in the exercise of constitutional rights. But see York v. Hawaii, 53 Hawaii 557 (1972). Unlike some government employes, this plaintiff has numerous opportunities for employment in the private sector.

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

These provisions are far broader than the Fourteenth Amendment. Pennsylvania legislation, moreover, treats age and sex discrimination in pari-materia with racial discrimination. See the Pennsylvania Human Relations Act of October 27, 1955, P.L. 744, as amended February 28, 1961, P.L. 47, §1, 43 P.S. §951 et seq.; Pennsylvania Fair Educational Opportunities Act of July 17, 1961, P.L. 776, 24 P.S. §5001 et seq.; and Opinion of Att. Gen. on Age Discrimination, 4 D. & C. 3d 144 (1978).

This court holds that under Pennsylvania law, age is a suspect classification.[6] The question, therefore, is whether there is an arbitrary or invidious classification between school teachers under the age of 65 and those over the age of 65. See McLaughlin v. Fla., supra. Defendant argues that the state has an interest in finding employment opportunities for young teachers and that the school system needs "new blood." To sustain a compulsory retirement law on this basis would indeed be an invidious classification. See Shapiro v. Thompson, 394 U.S. 618 (1969). A court cannot condone or sanction giving preference in employment opportunities on the basis of age.

In examining the code, neither counsel nor the court can attempt to create a legislative intent or justification which does not appear in the legisla-

---

6. See Frontiero v. Richardson, 411 U.S. 677 (1973), and Stern v. Mass. Indemnity & Life Ins. Co., 365 F. Supp. 433 (E.D. Pa. 1973), holding that sex is a suspect classification.

tive history or cannot be gleaned from the act itself.[7]

The Public School Code establishes a system of extensive benefits for teachers including, inter alia, health insurance, sabbatical leaves, promotion based upon additional degrees and courses, as well as retirement. This retirement, which was established in 1924, was subsequently amended and designed to interlock with the social security system in order to assure that retired teachers receive maximum benefits. No intent to prefer one age group over another can be inferred from this legislation.[8]

When plaintiff accepted employment with defendant, he entered into a contract in which he was guaranteed this panoply of benefits and paid into the pension fund sums based upon retirement at age 65. The entire fiscal management of the pension funds is predicated on the fact of retirement at age 65. This is neither inherently unreasonable nor contrary to the desires of the overwhelming majority of employes. The United States Labor Department estimates that only two/tenths of one percent of the total work force will not retire at age 65

7. It is apparent that the intent of the legislature in changing the retirement age from 62 to 65 was to provide maximum protection for the teachers by ensuring them employment until their coverage under social security became effective. No invidious intent can be inferred. Legislative Journal, May 28, 1957, and June 11, 1957, p. 3050.

8. Cf. the desegregation cases in which the courts consider intent in determining whether there is impermissible discrimination. See e.g., Keyes v. School District, No. 1, Denver, Colo., 413 U.S. 189, 207-08 (1973). See also Resident Advisory Board v. Rizzo, 425 F. Supp. 987 (E.D. Pa. 1976), and Zichy v. City of Phila., 392 F. Supp. 338 (E.D. Pa. 1975).

under the new law which permits employes in interstate commerce to work until age 70.[9] Until 1978, age 65 was the standard age of retirement for almost all employes. The Age Discrimination in Employment Act amendments of April 6, 1978, P.L. 95-256, raised the mandatory retirement age of employes in interstate commerce to 70. This act is inapplicable to plaintiff. Federal government cannot regu late state employer-employe relationships: Nat'l. League of Cities v. Usery, 426 U.S. 833 (1976).

To date, mandatory retirement of judges at age 70 has not been stricken as an impermissible classification.[10] Nor has the Federal act been found to be unconstitutional because of an impermissible classification between those under 70 and those over 70 years of age.

The leading cases in the area of mandatory retirement have involved statutes requiring retirement at an age earlier than 65. See e.g., Murgia, supra (50 years), and McIlvaine v. Pa. State Police, 454 Pa. 129, 309 A. 2d 801 (1973) (60 years). In Murgia, evidence was introduced to establish the need for more stringent physical standards than for other types of employment. In the case at bar, plaintiff is not being subjected to an earlier retirement than other public employes.[11]

---

9. N.Y. Times, Dec. 31, 1978, p. 20.

10. Judges were among the few occupations with a mandatory retirement at 70. See O'Neil v. Baine, 568 S.W. 2d 761 (Mo. 1978); Malmed v. Shapp, Civil Action No. 78-1418 (E.D. Pa. 1978).

11. His mandatory retirement antedates the amendment to the Age Discrimination Act, so that there can be no invidious classification between teachers and Federal employes and employes in interstate commerce.

Plaintiff entered into a contractual relationship[12] with defendant in 1950, in which retirement with a pension was a part of the benefits and burdens of the agreement.[13] This is to be contrasted with a criminal law which invidiously classifies certain defendants, and with social security and other retirement schemes which provide for unequal assessments based upon classification by sex. See Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702 (1978), and EEOC v. Colby College, 47 L.W. 2417 (1st Cir. 1978). See also Stevens v. Califano, 448 F. 2d 1313 (N.D. Ohio 1978), appeal filed 47 U.S.L.W. 3287 (No. 78-449, Sept. 15, 1978). Retirement provisions are applied equally to all teachers.

Due process of law in a system under which all persons are treated equally, as in the teacher retirement law, does not require an individual hearing. Cf. Palmer v. Ticcione, supra. There are approximately 12,000 teachers employed by defendant school system. Obviously individual hearings would impose a costly and unreasonable burden which would ultimately be borne by the taxpayers.[14]

Plaintiff has not been denied equal protection of

---

12. The relationship of teachers to school systems is contractual, although regulated by state statute: Teachers' Tenure Act Cases, 329 Pa. 213, 197 Atl. 344 (1938).

13. The legislature has changed the age of mandatory retirement from 70 to 62 to 65: Act of June 28, 1957, P.L. 395, §1, 24 P.S. §11-1122, established the age of 65.

14. Unlike police officers who receive regular physical examinations, there is no system of physical examination of school teachers. See Wood, Mandatory Retirement and Equal Protection, 28 Labor Law J. 142 (1977).

the law or due process of law when he was retired pursuant to section 1122 of the Public School Code.

The court enters the following

## FINDINGS OF FACT

1. Plaintiff is a 69-year-old Pennsylvania resident who had been employed by defendant as a school teacher in Philadelphia from 1950 to 1977.

2. In June, 1977, defendant terminated plaintiff's services.

3. Plaintiff was in good health and fully qualified to teach at the time of his termination.

4. Plaintiff was eligible to receive full Federal social security benefits prior to June, 1977.

5. Plaintiff is able to teach "film" as well as English.

6. There is no clearly established shortage area in film teaching and plaintiff has no special qualifications which other teachers lack.

7. Plaintiff's contract with defendant, entered into in 1950, guaranteed, inter alia, a pension to commence upon retirement at age 65.

8. Plaintiff received a one-year employment contract extension, which ended in June, 1977.

9. Plaintiff is not being subjected to an earlier retirement than are other public employes.

10. Plaintiff did not receive an individual hearing before being terminated.

The court enters the following

## CONCLUSIONS OF LAW

1. Plaintiff is not entitled to retention under the Guidelines for Recommending Retention in Service beyond Mandatory Retirement Age.

2. Government employment is not per se a fundamental right.

3. Under Pennsylvania law, age is a suspect classification.

4. There is no arbitrary or invidious classification between school teachers under the age of 65 and those over the age of 65.

5. Defendant was not required to give plaintiff an individual hearing before terminating his employment.

6. Plaintiff was not denied equal protection of the law or due process of law when he was retired pursuant to 24 P.S. §11-1133.

The court enters the following

## ORDER

And now, January 31, 1979, defendant's motion for compulsory nonsuit is granted.